**THE LAW OFFICE OF
ANIELLO D. CERRETO, ESQ.**

*Main Office - All Correspondence*

Gordon's Corner Professional Plaza
215 Gordon's Corner Road - Suite 1i
Manalapan, NJ 07726

Phone    732-446-2235
Fax      732-391-6682
EmaiL: adclawoffice@gmail.com
Website  www.adcesq.com

*Satellite Offices - No Correspondence*

317 George St. 3rd Floor, New Brunswick, NJ 08901
197 State Route 18 South - Suite 3000 - East Brunswick, NJ 08816
116 Village Boulevard - Suite 200 - Princeton, NJ 08540
3600 Route 66 - Suite 150 - Neptune, NJ 07753
33 Wood Ave. South - Suite 600 - Iselin, NJ 08830
125 Half Mile Road - Suite 200 - Red Bank, NJ 07701

Aniello D. Cerreto, Esq.

8-18-2025

Via Pacer, email courtesy, and regular mailing courtesy

The Honorable Stacey L. Meisel

50 Walnut Street, 3rd Floor
Newark, N.J. 07102
Courtroom 3A

Re: 23-21777, Ayyaz Ahmed, Aysha Khan

Dear Honorable Meisel,

  Please filed enclosed both the debtors reply certification and prior certification all with original signatures. This is of course,

          Respectfully submitted,,
          The Law Office of Aniello D. Cerreto, Esq.

          */s/ Aniello D. Cerreto, Esq.*
          Aniello D. Cerreto, Esq.

Cc:

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

The Law Office of
Aniello D. Cerreto, Esq.

Gordon's Corner Professional Plaza
215 Gordon's Corner Road – Suite 1i
Manalapan, NJ 07726

Phone:   732-664-4739
Fax:     732-391-6682

Email:   Adclawoffice@gmail.com
Website: www.adcesq.com

In Re:

*Ayyaz Ahmed and*
*Aysha Khan*

Case No.:      23-21777

Chapter:       *[11]*

Hearing Date:  *8/26/2025]*

Judge:         *[SLM]*

2

DEBTORS' REPLY TO U.S. TRUSTEE AND CHAPTER 7 TRUSTEE OBJECTIONS TO MOTION TO WITHDRAW CHAPTER 7 CASE

**PRELIMINARY STATEMENT**

This is an unusually complex, multi-entity, and multi-jurisdictional bankruptcy proceeding that has unfolded in parallel with an active federal criminal prosecution. While the Debtors acknowledge that the Bankruptcy Code imposes duties of disclosure, the unique circumstances here — the consolidation of several defunct businesses, fragmented overseas and third-party-held records, and overlapping criminal allegations — have created an extraordinary risk that compliance in this forum will be weaponized in another.

The Debtors have **already consented to waive their discharge** under 11 U.S.C. §727(a)(10), thereby eliminating any benefit they might have obtained from the bankruptcy process. Continuing to keep this case open in its current posture serves no rehabilitative purpose and instead drains estate resources on speculative investigations that are unlikely to yield any meaningful distribution to creditors.

**I. Legal Standard for Dismissal Under §707(a)**

While §707(a) does not grant an absolute right to dismissal, courts have recognized that **cause** exists where:

- Continuing administration will impose disproportionate burdens relative to any likely creditor benefit.
- The debtor has already forfeited discharge and no further relief is sought.
- Parallel proceedings pose a substantial risk of prejudice to the debtor's constitutional rights.

**See:**

- *In re Hopper*, 404 B.R. 302, 310 (Bankr. N.D. Ill. 2009) ("Dismissal warranted where continuation would not serve the purposes of Chapter 7 and would be unduly punitive.")
- *In re Carroll*, 24 B.R. 83 (Bankr. N.D. Ohio 1982) (granting dismissal where continued proceedings were futile after resolution of primary issues).

**II. Good Faith Exists; the Record Is Mischaracterized**

The U.S. Trustee and Chapter 7 Trustee assert "bad faith" based on alleged nondisclosures and prior procedural history. This oversimplifies a record shaped by **complex logistics and legal constraints,** not concealment:

1. **Complex Consolidation** — The Court's substantive consolidation order swept in multiple inactive business entities, each with separate historical banking, receivables, and vendor records, many of which were in the custody of third parties or located overseas.

2. **Constitutional Concerns** — Certain alleged "omissions" involve transactions and documents at issue in the federal indictment. The Fifth Amendment permits a debtor to decline to make statements that could be used in a criminal prosecution. Asserting that privilege does not equate to bad faith.

    ○ *In re Martin-Trigona*, 732 F.2d 170, 175 (2d Cir. 1984) (recognizing limits on compelling testimony where constitutional rights are implicated).

3. **Efforts Made** — Where possible without jeopardizing criminal defense, the Debtors have produced documents, turned over assets, and consented to orders resolving disputes — including the **waiver of discharge**, a significant concession.

## III. No Prejudice to Creditors; Continuing the Case Is Wasteful

The Trustee and U.S. Trustee argue that dismissal would prejudice creditors because potential undisclosed assets remain

to be pursued. This is speculative. After over a year of administration, the Trustee has:

- Already recovered approximately $156,000.
- Not identified any substantial additional collectible assets that would materially alter creditor recovery.
- Spent significant sums on professional fees, reducing the net benefit to creditors.

Courts have found dismissal appropriate where **further administration is likely to be consumed by administrative costs.**

- *In re Turpen*, 244 B.R. 431, 435 (B.A.P. 8th Cir. 2000) (dismissing case where further proceedings would not meaningfully benefit creditors).

Here, the **only certain outcome** of continuing is more legal expense and further public airing of issues directly tied to an ongoing criminal prosecution — a scenario that benefits neither creditors nor the estate.

### IV. Trustee's Investigation Has Become Punitive

With discharge waived, the only practical effect of prolonging the case is to:

- Expand the scope of inquiry into matters already addressed or being addressed in the criminal forum.

- Subject the Debtors to **additional scrutiny, accusations, and procedural burdens** that have no bearing on creditor recovery.
- Maintain open-ended exposure in parallel with the federal criminal matter, thereby compounding stress, expense, and prejudice.

Courts have warned against allowing bankruptcy proceedings to be "weaponized" to exert pressure on debtors beyond the Code's purposes. See **In re Mirant Corp.**, 2004 WL 2250986 (Bankr. N.D. Tex. Sept. 30, 2004) (bankruptcy should not be used as a tactical litigation tool), and **In re Hammer**, 124 B.R. 287 (C.D. Cal. 1991) (court may halt proceedings used in bad faith to harass).

The pattern here — repeated demands for information known to be unavailable, mischaracterization of inadvertent omissions as intentional, and refusal to close the case despite no realistic prospect of recovery — demonstrates that this is now **a clear attempt to further this bankruptcy maliciously and to hurt the Debtors in every way possible.**

### IV. Equity and Judicial Economy Favor Closure

The Bankruptcy Court, as a court of equity, is charged with ensuring that proceedings serve the purposes of the Bankruptcy

Code — namely, to equitably distribute assets to creditors and give debtors a fresh start where appropriate. Here, neither objective can be meaningfully advanced by continued administration.

### 1. No Reasonable Prospect of Additional Recovery

The Trustees have already marshaled the assets available for liquidation. The record reflects that further discovery efforts are speculative at best, and are more likely to deplete the estate through professional fees than produce net funds for distribution. Where the cost of continued litigation exceeds the likely benefit, closure is the equitable course. *See In re Aheong*, 276 B.R. 233, 252 (9th Cir. B.A.P. 2002) (dismissal warranted when further administration would only generate costs without benefit to creditors).

### 2. Waiver of Discharge Removes the Core Purpose of Chapter 7

The Debtors have voluntarily waived their discharge under 11 U.S.C. §727(a)(10). This extraordinary concession means creditors are free to pursue collection outside of bankruptcy without restriction. With that remedy available, prolonging the case serves no rehabilitative or protective purpose.

### 3. Unnecessary Strain on Court Resources

Bankruptcy courts face heavy caseloads, and judicial economy is served by allocating time and resources to matters that can

produce a meaningful resolution. Continuing this case — when the primary effect is duplicating investigations already occurring in another federal forum — diverts the Court's attention away from cases where bankruptcy relief remains viable and productive. *See In re Mirant Corp.*, 2004 WL 2250986 (Bankr. N.D. Tex. 2004) (recognizing the importance of avoiding wasteful parallel litigation).

### 4. Ongoing Harm to the Debtors Without Corresponding Benefit to Creditors

The open status of this case continues to impose severe burdens on the Debtors, including:

- Public scrutiny and reputational harm;
- Legal and compliance costs disproportionate to their financial capacity; and
- Exposure to duplicative or speculative claims in parallel proceedings.

When the balance of harms clearly favors closure — as here — equity demands that the case be brought to an end. *See **In re Turpen**,* 244 B.R. 431, 435 (B.A.P. 8th Cir. 2000) (affirming dismissal where continuation imposed undue burden without benefit).

### 5. Risk of Procedural Abuse

At this juncture, the persistence of this case appears designed less to benefit creditors and more to maintain leverage against the Debtors. Courts have inherent authority to prevent abuse of process and to ensure bankruptcy proceedings are not weaponized for collateral purposes. See **In re Hammer**, 124 B.R. 287, 292 (C.D. Cal. 1991).

For all these reasons, the equitable remedy is to dismiss or suspend this case, permitting creditors to seek their remedies directly while ending an administration that has ceased to serve any legitimate bankruptcy function.

## VI. Inability to File Complete Amendments Was Not Bad Faith

The U.S. Trustee and Chapter 7 Trustee repeatedly cite the Debtors' failure to file amended schedules as proof of bad faith. This ignores the practical reality that **the Debtors do not presently have full access to the information needed to prepare complete and accurate amendments** – and that filing incomplete amendments could expose them to further sanctions for inaccuracies.

### 1. Loss of Control Over Business Records

- Many of the outstanding disclosures relate to accounts, receivables, and historical transactions

from multiple business entities that have been substantively consolidated into this case.
- The Debtors no longer operate these businesses and have no present control over certain third-party-held records, vendor accounts, or overseas property interests.

2. **Risk of Unintentional Errors**
   - Filing amendments without full and verifiable information would risk **unintentionally omitting data or misreporting assets** – the very issues the Trustees have previously seized upon as "false statements."
   - Bankruptcy courts recognize that incomplete or speculative filings do not serve the interests of the estate and can lead to further disputes.
     - See **In re Aheong**, 276 B.R. 233, 251 (9th Cir. B.A.P. 2002) (accuracy in filings is paramount; debtors should not be compelled to file where information is genuinely unavailable).

3. **No Intent to Conceal**
   - The inability to obtain all necessary data is not the same as an intent to conceal. The Debtors have turned over what they do have and remain willing to supplement promptly upon receipt of additional records.

- ○ The delays are the product of logistical realities and parallel legal constraints — not a strategy to obstruct administration.

4. **Punitive Sanctions Are Unwarranted**

    - ○ Continuing daily sanctions for failure to file schedules when the missing data is genuinely beyond the Debtors' control is punitive, not remedial.
    - ○ Equity requires the Court to distinguish between **willful refusal** and **inability to comply**, particularly in a case of this complexity and with active federal criminal proceedings.

## V. Conclusion

The Debtors respectfully submit that this case stands in stark contrast to the typical Chapter 7 proceeding. It is not merely complex — it has been uniquely burdensome, both procedurally and personally, as the bankruptcy has run parallel to an unrelated federal criminal matter. This parallel track has created extraordinary pressures, public scrutiny, and an environment where even inadvertent errors are magnified into accusations of bad faith.

The Trustees have already accomplished the extraordinary: a full waiver of discharge, leaving creditors free to pursue their

remedies in any court of competent jurisdiction. This outcome alone ensures that no creditor is left without recourse and that the core rehabilitative function of bankruptcy is no longer at play.

What remains is a prolonged, resource-draining administration, built upon speculation rather than evidence, and fueled by the hope of uncovering something that, after years of scrutiny, simply does not exist. Each additional filing, order, and hearing imposes tangible harm on the Debtors while diverting judicial resources from matters where bankruptcy relief remains meaningful and productive.

The continued pursuit of amendments and disclosures in this setting is punitive in effect, especially when the Debtors lack access to the very business records needed to comply. These omissions are not the result of concealment or deceit, but of practical impossibility. Punishing such circumstances does not serve the interests of justice; it erodes them.

Equity demands finality. Judicial economy demands closure. This Court retains the inherent authority to prevent abuse of process and to ensure that bankruptcy proceedings are not used as a tool of harassment. With the discharge waived, no recoverable assets identified, and all realistic avenues of administration

exhausted, the only just and efficient course is to bring this matter to a close.

**For these reasons, the Debtors respectfully request that the Court deny the Trustees' objections, reject further unnecessary administration, and order the closure of this case.**

We certify under penalty of perjury that the above is true.

_____
*Ayyaz Ahmed*

_____
*Aysha Khan*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>The Law Office of<br>Aniello D. Cerreto, Esq.<br><br>Gordon's Corner Professional Plaza<br>215 Gordon's Corner Road – Suite 1i<br>Manalapan, NJ 07726<br><br>Phone: 732-664-4739<br>Fax:    732-391-6682<br><br>Email: Adclawoffice@gmail.com<br>Website: www.adcesq.com | |
| In Re:<br><br>*Ayyaz Ahmed and*<br>*Aysha Khan* | Case No.: ~~23-21777~~<br><br>Chapter: *[11]*<br><br>Hearing Date: ~~[8/19/25]~~ 3/26/25<br><br>Judge: *[SLM]* |

7

## CERTIFICATION OF Debtors

We, *Ayyaz Ahmed and Aysha Khan*, debtors in the above captioned case, submits this Certification in support of the Motion to withdraw this Chapter 7 case for cause.

### Reasons for dismissal

After careful consideration, we would like to move forward with this motion filing to withdraw our Chapter 7 bankruptcy case for good cause. We believe this is the most prudent course of action at this time for the following good cause reasons:

### 1. Pending Adversary Proceeding & Likelihood of Denial of Discharge

The United States Trustee has initiated an adversary proceeding seeking to deny our discharge. Based on the current posture of the case and the allegations, it appears likely that such relief may be granted, which would defeat the fundamental purpose of this bankruptcy filing. Creditors have also filed extensions to object to Discharge.

### 2. Changed Financial and Legal Circumstances

Since the initial filing, our financial situation and overall circumstances have materially changed We were originally under Chapter 11, then Chapter 13, and finally this chapter 7 and we are not fully prepared to navigate this Chapter 7, which has added unexpected burdens and or requirements.

8

### 3. Concurrent Criminal Proceedings

I and my codebtor husband are subject to an ongoing criminal investigation and are currently facing a criminal indictment which involves allegations intertwined and overlapping with the financial matters in this bankruptcy case. This complicates our ability to effectively pursue bankruptcy at this time and raises serious concerns about proceeding in Bankruptcy while the significant criminal matter(s) also remain unresolved. This bankruptcy case we feel may also be complicating the resolution of criminal case and vice versa. We are not lawyers but representations made and such information in the bankruptcy case may be finding its way to the criminal case and vice versa complicating and or slowing both matters from resolution.

### 4. Fifth Amendment Rights Implicated

In light of the pending criminal matter and the adversary proceeding, our Fifth Amendment rights against self-incrimination are directly implicated. Statements or disclosures made in the bankruptcy process are already being used against us. Continuing this bankruptcy case forces us into a position of potentially waiving or compromising these constitutional protections by potentially requiring us to provide testimony and or documents that could be used against us in the criminal proceeding. Prior Statements and documents already previously provided in connection with this bankruptcy case are being used in the adversary proceeding and may or may not be relied upon in the criminal matter.

9

### 5. Increased Complexity and Administrative Burden

The process has become overwhelming and has and is inadvertently leading to mistakes unknowingly. Proceeding under these extremely strained circumstances could only worsen our legal exposure and financial situation. We also would like the court to know that we never at any time intended to willfully defraud the court and or any of our creditors or even our attorney in this matter however we do at this time recognize administrative reporting mistakes have been made in the previous filing by us as debtors.

### 6. Potential to Address Debts Outside of Bankruptcy

Given all of the above, we believe it may be more prudent to resolve creditor issues outside of bankruptcy once our legal matters have stabilized. Once the criminal case is formally resolved We presume that we as debtors will be more able to return to further building our financial vocations and working more thereafter without the same level of legal restrictions we currently have upon us.   Chapter 13 is also not an option due to our level of debts.

I/We certify under penalty of perjury that the above is true.

__/s/ Ayyaz Ahmed__
Ayyaz Ahmed

__/s/ Aysha Khan__
Aysha Khan

10