DISTRICT OF NEW JERSEY

In re:

Aysha Khan and Ayyaz Ahmed   Debtor

Chapter 7

Case No. 23-21777

Hon. Stacey Meisel

U S. BANKRUPTCY COURT
FILED
NEWARK. N.J

2025 SEP 19 P 1: 14

JEANNE A. NAUGHTON

BY: _____
DEPUTY CLERK

MOTION TO ACKNOWLEDGE PRIOR NON-COMPLIANCE, REQUEST LIMITED
RELIEF, AND OFFER CONDITIONS FOR FULL COOPERATION AND SETTLEMENT

PRELIMINARY STATEMENT

The Debtors, Ayyaz Ahmed and Aysha Khan, submit this motion
following the Court's denial of their prior request for
withdrawal and dismissal. The Debtors submit this motion with
the sincere intention to resolve all disputed matters in good
faith, minimize the burden on the Court and the Trustee, and
ensure the equitable treatment of creditors while protecting
non-estate interests.

**BACKGROUND AND PROCEDURAL HISTORY (AMENDED)**

The Debtors initially sought bankruptcy protection with the
intention of addressing significant financial hardship,
largely stemming from personal guarantees on business debts
related to the operations of multiple healthcare and pharmacy
entities.

The original goal was to propose a feasible repayment plan under
Chapter 13. However, on the advice of then-counsel,
the Debtors' filing was converted to a Chapter 7 proceeding.

It is important to clarify that the majority of the debts listed
in the bankruptcy schedules originated from business
liabilities, and many of the obligations were personally
guaranteed—knowingly in some instances, and unknowingly in
others—particularly those tied to pharmaceutical wholesalers,
equipment leases, and vendor agreements required for day-to-day
business functionality. The Debtors did not originally intend to
liquidate assets under Chapter 7 but rather to reorganize under
a payment plan structure. This shift in legal strategy occurred
under the direction and advice of prior counsel, who had advised
that a Chapter 7 liquidation might yield faster resolution.

Prior to the present filing, the Debtors attempted multiple
bankruptcy filings which were dismissed due to issues of
non-compliance and procedural confusion.
These were not bad faith attempts to evade the bankruptcy
process, but the result of limited understanding of the legal
process,
poor guidance, and the logistical chaos caused by managing
multiple complex businesses under financial duress.
At the time, different law firms were retained to separately
address the business entities' insolvency due to the added legal
complexity, leading to an erroneous bifurcation between personal
and business filings. These actions were taken in good faith and
in a disorganized attempt to preserve remaining business
functions and income sources, not to conceal assets or mislead
the court.Prior to the present filing, the Debtors made multiple
attempts to seek relief under the Bankruptcy Code.

Unfortunately, those prior cases were dismissed due to procedural issues, including missed fee payments and filing deficiencies. These dismissals were **not the result of bad faith or any attempt to abuse the bankruptcy process**, but rather arose from a genuine lack of legal understanding and overwhelming personal and financial stress.

The Debtors initially filed *pro se*, believing in good faith that they could navigate the process independently. However, they soon encountered significant confusion and difficulty complying with the complex procedural requirements. The first two dismissals occurred solely because the filing fee was not paid after submission — an **unintentional oversight**, not an effort to delay or frustrate the process. At the time, the Debtors were under immense financial and emotional pressure, and unfortunately received **incorrect guidance** regarding the bankruptcy process from non-attorneys and unofficial sources.

The Debtors respectfully submit that they **did not benefit** in any way from the prior filings, nor did they have any motive to deceive the Court. They have consistently sought protection through lawful means and now, with proper legal support and full transparency, are committed to complying with all requirements of the Bankruptcy Code. They respectfully request that the Court **view these prior dismissals not as abuse,** but as failed yet earnest efforts to seek relief amidst very challenging circumstances.

The Debtors wish to clarify that the original intent behind seeking bankruptcy relief was to file under Chapter 13 of the Bankruptcy Code, which would have enabled the establishment of a

repayment plan to address substantial business-related debt. The vast majority of the debts listed in the petition arose from commercial operations, including pharmacy and medical ventures, for which the Debtors were named as personal guarantors—often without full understanding of the long-term liability implications. The conversion to Chapter 7 was a decision made abruptly on the advice of counsel, and not in line with the Debtors' initial planning or understanding. The Debtors assert that had proper guidance and accurate information been provided, a Chapter 13 plan would have been pursued and supported through independent legal counsel for the involved businesses, which were being handled by separate law firms due to the complexity and multi-party ownership structure. Any perceived inconsistencies or omissions in the initial schedules were therefore not the product of concealment or intent to mislead, but of rapid procedural changes and ineffective communication from prior counsel.


Background

1. The Debtors filed a joint Chapter 13 petition on December 21, 2023, later converted to Chapter 7.
2. The estate was substantively consolidated with multiple business entities on **December 17, 2024.**
3. On May 22, 2025, the Court entered a Contempt Order due to failure to file schedules and turn over assets- 4300 was paid towards this.
4. Sanctions and ongoing penalties were applied due to prolonged non-compliance.


**PURPOSE OF THIS MOTION**

The Debtors seek:

- To express full intention to comply with outstanding obligations;
- To propose a formal cooperation plan with timelines;
- To request conditional settlement of administrative costs;

Additional Clarifications and Factual Disputes

1. Use of Lush Account for Business Transactions

At the time of the bankruptcy filing, Debtor Aysha Khan did not possess access to any functioning bank account under her own name due to the constraints placed by ongoing litigation and financial complications. With the guidance and approval of her counsel at the time—and with what she believed was informal approval from the Trustee—she conducted certain business-related transactions through an account held under the name of 'Lush Floral LLC.' It is important to emphasize that there was no intention to mislead the Court or conceal assets, especially since the entity Lush Infusions and its relevant accounts were only formally added to the estate in December 2024. Prior to this inclusion, Lush was not disclosed as it was not yet considered part of the estate. Any use of the account was done transparently for business purposes and with the sincere belief it was permitted. The Trustee has raised repeated concerns regarding the use of an account held under the name "Lush"—a business entity unrelated to the named debtors—arguing that such use evidences concealment or misrepresentation of financial interests. However, these allegations do not accurately reflect the timeline, purpose, or context of the account's use.

It is critically important to clarify that the Lush account was not in use by the Debtor prior to the Chapter 7 filing in 2023. The account was only utilized after the bankruptcy petition had

been filed, and its use was directly related to post-petition efforts by Aysha Khan to maintain a lawful source of income through body contouring, med spa services, and other licensed aesthetic treatments. These business efforts were undertaken openly, and the use of the Lush account occurred with the express knowledge of prior legal counsel and based on what the Debtor reasonably understood to be permissible conduct under the circumstances.

At the time, the Debtor did not have any functioning bank accounts in her own name due to pre-existing legal and financial complications, including judgments and banking restrictions associated with her name. Therefore, on the advice of counsel—and absent any direct objection from the Trustee at the time—the Debtor used the Lush account as a means of accepting payments from clients, paying operating expenses, and continuing to support her family through lawful earnings.

The Lush account also saw limited personal activity post-filing, primarily because there were no other functioning personal accounts available to the Debtor. There was no intent to hide or divert assets. Notably, the Lush and Prestige entities were only added to the bankruptcy estate in December 2024, following a court order. Prior to this, there was no clear or formal indication from either the Trustee or the court that the Lush account was to be considered part of the estate.

The Debtors now acknowledge that the lack of disclosure regarding the Lush account was a consequence of both attorney misguidance and a sincere misunderstanding of the post-petition obligations under Chapter 7. The use of this account was always rooted in survival and operational continuity—not in deception.

To that end, the Debtors are preparing a full accounting of all transactions exceeding $600 dating back two years from December 2023, including those processed through the Lush account, and will file amended schedules and supplemental statements accordingly. This step is being taken as part of the Debtors' continued good faith efforts to cooperate with the Trustee and comply with every provision of the Bankruptcy Code.

2. Receivership of Prestige Infusions by Leonite Capital

Prestige Infusions LLC has been under court-appointed receivership since 2022, with Leonite Capital acting as the creditor granted full control over its bank accounts, claims processing, and business assets. This critical detail has been repeatedly overlooked in the Trustee's analysis. The 1.2 million dollars allegedly owed to Prestige has been exclusively handled by Leonite Capital and its receiver, who were authorized to oversee and recover any outstanding amounts and manage financial matters. The Debtors had no access to these funds and were not involved in any recovery or disposition decisions related to Prestige. The Trustee's continuing reference to these funds as concealed or accessible by the Debtors is inaccurate and contradicts the 2022 court order. One of the central misunderstandings reflected in the Trustee's objections relates to the alleged failure to disclose and manage assets and receivables related to Prestige Infusions. The Debtors respectfully submit that the issues surrounding Prestige Infusions should be properly directed toward Leonite Capital, the court-appointed receiver in this matter since 2022.

Pursuant to a binding court order issued prior to the Chapter 7 filing, Leonite Capital was granted full receivership rights and responsibilities over all operations and assets of Prestige Infusions. This included not only control over the company's bank accounts, financial records, claim submissions, and refunds, but also full authority and obligation to manage the company's outstanding liabilities, such as unpaid taxes, employee compensation, payroll, vendor disputes, and regulatory compliance issues.

Since that time, Leonite maintained full access to all claim information, including electronic medical records and billing systems. They also had control over and access to any refund checks, receivables, or settlement funds that were due to Prestige Infusions. The Debtors no longer had any access to the corporate accounts, documents, or operational controls.

Therefore, the repeated references to uncollected receivables
(including a purported $1.2 million in pending insurance
reimbursements) should not be construed as concealment or
neglect by the Debtors, but rather as a matter solely within
Leonite Capital's responsibility under the receivership order.

Furthermore, if funds were not collected, if tax filings were
not completed, if employees were unpaid, or if additional
liabilities were incurred—those failures stem from Leonite's
conduct or lack thereof, not from any intentional avoidance or
concealment on the part of the Debtors. The Trustee and the
Court have consistently overlooked this receivership structure
and failed to hold Leonite accountable for the performance of
their legal obligations.

The Debtors respectfully request that the Court acknowledge and
take judicial notice of the 2022 Receivership Order and direct
any further asset tracing, audit, or enforcement related to
Prestige Infusions toward Leonite Capital and its legal
representatives, not toward the Debtors who no longer had
control or authority over the company.

The Debtors stand ready to assist with the documentation and
provide any supporting materials that may exist, but reiterate
that any accountability for Prestige's current financial status
lies squarely with Leonite as receiver—not the individual
Debtors.

3. Clarification on Transfers Over $600

The Debtors acknowledge that during the original filings, they
omitted listing certain personal transfers over $600 made prior
to the bankruptcy. These were not done with intent to mislead
but were excluded due to confusion between personal transactions
and unrelated business activity. The attorney failed to
adequately review the relevant accounts or request a full
transaction history, which could have clarified these issues
earlier. At the time, the Debtors were under the belief that

business transactions were excluded, and many of the entities
were not yet ordered to be included in the estate. This failure
was compounded by inconsistent instructions from counsel and the
Trustee's evolving scope of inclusion.

Disclosure Limitations: Golden Health Care Pharmacy, LLC

The Debtors respectfully clarify their limitations in providing
full documentation and disclosures concerning Golden Health Care
Pharmacy, LLC ("Golden"), one of the entities subsequently
brought into the bankruptcy estate by Court order. While Debtor
Aysha Khan is associated with Golden in various public records,
the business was never solely operated or financially controlled
by her, and in fact, she was not a signer on the company's
primary bank accounts.

The primary operating account for Golden was held at Bank of
America under the exclusive control and signature authority of
Abdullah Alaqrabawi. Aysha Khan had no access to that account
and was not in a position to monitor or control the financial
activities or disbursements from it. Despite requests, she has
never received full records for that account. As such, there may
still be an active Golden bank account that the Trustee does not
yet have access to, and the Debtor respectfully requests that
the Court direct the Trustee to issue subpoenas to Mr.
Alaqrabawi and Bank of America to compel production of those
financial records.

It is also important to emphasize that the major liabilities
attributed to Golden — including those owed to major
pharmaceutical wholesalers such as Value Drugs,
AmerisourceBergen, Anda Pharmaceuticals, and other vendors —
were listed in the personal bankruptcy schedules to the extent
that Aysha Khan was either the account holder or had signed as a
guarantor. These debts were not concealed and were included in
good faith.

The Debtor acknowledges that, in order to comply with Bankruptcy
Code requirements, she and co-debtor Ayyaz Khan are undertaking
a full review of available financial records and bank statements
going back to December 2022 (two years prior to the petition
date) to identify and disclose any transfers over $600 to any
individual or entity, including any amounts transferred to Mr.

Alaqrabawi. The Debtors are committed to disclosing these transactions in an amended Schedule B, SOFA, and supporting declaration upon completion of the accounting review.

The Debtors further assert that any past omissions regarding Golden were not done with intent to conceal, but due to:

- A lack of clarity about whether business entities were to be included at the outset of the Chapter 7 filing;
- Conflicting advice and actions by prior counsel during a time of severe financial and legal duress;
- Lack of access to business records, much of which were either lost during property turnovers or remain under the control of other partners;
- A complex operational structure where Mr. Alaqrabawi and others exercised dominant control over business banking and vendor communications, despite public records that included Aysha Khan's name.

Disclosure Limitations: Oak Hills Medical Plaza, LLC

The Debtors submit the following explanation regarding Oak Hills Medical Plaza, LLC ("Oak Hills"), a pharmacy and medical operation under the partial control of Aysha Khan and Ayyaz Khan during the relevant pre-petition period.

While the Debtors were actively involved in the financial operations of Oak Hills, the business was severely impacted by the COVID-19 public health crisis, which caused frequent closures, staffing shortages, interruptions in supply chains, and reimbursement delays from insurers. Oak Hills, like many similarly situated small healthcare providers, relied on COVID-19 vaccine and testing reimbursement programs to remain afloat.

During 2021-2022, Oak Hills submitted and processed a significant number of COVID-19-related claims, some of which remain unbilled or pending, due in large part to third-party billing errors, vendor transitions, or the interruption of operations. The Debtors are in the process of preparing a complete list of pending COVID-19 testing and vaccination claims to submit to the Trustee and the Court for review.

Importantly, the Debtors assert that any funds withdrawn from
Oak Hills business accounts during that time period constituted
lawful owner draws or compensation for work performed, as the
Debtors were the operating members of the business. These
distributions were not hidden, nor were they made to hinder
creditors, but represented necessary personal income during an
otherwise financially destructive public health emergency.

The Debtors also wish to notify the Court that, following Aysha
Khan's indictment and court-ordered travel restrictions, she was
no longer able to manage or retrieve assets from the Oak Hills
location. The business was subsequently evicted, and any medical
equipment or remaining inventory was lost, removed, or abandoned
by the property owner or landlord. The Debtors have no current
access to any remaining machinery, files, or documentation from
the premises.

The Debtors respectfully request that the Court take judicial
notice of the exceptional conditions during the COVID-19
pandemic and consider the extraordinary pressure placed upon
small health businesses. The financial issues faced by Oak Hills
and similar businesses during this period must be understood
within the broader context of the pandemic's economic and
operational disruptions.

Moreover, the Debtors maintain that this business was not
excluded or concealed in the bankruptcy filing with intent to
mislead, but rather due to the loss of records, absence of
ongoing operations, and a misunderstanding regarding whether
dormant or shuttered entities needed to be formally listed when
no income was being generated.

**Disclosure Limitations: Deltona Apex Pharmacy, LLC**

The Debtors provide the following explanation regarding Deltona
Apex Pharmacy, LLC ("Deltona"), in light of concerns raised by
the Trustee related to incomplete disclosures, financial
records, and asset control.

Contrary to any implication of concealment or non-cooperation,
Deltona was not operated, managed, or controlled by Ayyaz Ahmed,
despite his name being listed as a formal owner or associated
party on certain state filings or corporate documents. In truth,

Deltona was managed entirely by Aysha Khan's sister, Areeba
Khan, who exercised full operational control over all facets of
the business.

Areeba Khan was solely responsible for:

- All claim handling and reimbursements from PBMs and
  insurers,

- Creditor communications and vendor negotiations,

- Employee payroll and hiring, including pharmacist and
  technician staff,

- Lease and landlord interactions, including rental payments,

- Management and use of Deltona's financial accounts.

Importantly, Deltona maintained several business bank accounts
during its operation, including a Wells Fargo account, on which
Ayyaz Ahmed was not a signer, and Areeba Khan retained exclusive
access. Mr. Ahmed did not participate in any withdrawals, claim
submissions, or day-to-day operations. He was also not privy to
the accounting, nor was he furnished with internal financial
statements or vendor invoices. As such, he is unable to produce
documents that were never in his possession or under his
authority.

The Debtors emphasize that the inability to produce these
records is not the result of willful concealment or bad faith,
but rather stems from Areeba Khan's exclusive control of the
business and the ongoing deterioration of family relationships,
which has rendered cooperation increasingly difficult.

Furthermore, while Deltona was not initially listed in the
bankruptcy filing, it was not generating personal income for
either Debtor and was believed to be handled separately at the
time by another professional entity. Its addition to the estate
occurred after the original petition was filed, and efforts have
since been made to locate relevant information and include
whatever is accessible in the updated schedules.

The Debtors will be filing a separate motion to clarify and
sever any further obligations or requests made to Ayyaz Ahmed
regarding Deltona, as he does not possess the documents being
requested by the Trustee and cannot reasonably obtain them
without legal compulsion directed at the actual operator.

The Debtors again request that the Court and Trustee direct
appropriate investigatory focus on Areeba Khan, whose access to
the relevant documents and business history is necessary to
complete the financial picture of Deltona for the estate.
Holding Mr. Ahmed accountable for missing records under these
circumstances would result in unjust prejudice and further delay
the case's resolution. The Debtors respectfully submit a
clarification regarding the ownership and disclosure of Deltona
Apex Pharmacy, LLC. While this business entity may have appeared
in past records associated with the Debtor Ayyaz Ahmed, it is
important to note that **Mr. Ahmed formally ceased all ownership
and operational involvement in the business as of June 2021.**

This change in ownership was duly recorded in the company's **2021
Annual Report filed with the Florida Department of State
(Division of Corporations)**, which officially removed Ayyaz Ahmed
as a member or managing officer. The Annual Report further
designates **Areeba Khan as the sole managing member and principal
of the business** as of that date.

The Debtors believe it is necessary to bring this to the Court's
attention to **avoid any misunderstanding or inadvertent
attribution of assets or liabilities** related to Deltona Apex
Pharmacy, LLC to Mr. Ahmed. This business was not owned,
controlled, or financially beneficial to Mr. Ahmed during the
relevant lookback period, including at the time of the current
petition.

The Debtors submit this disclosure in good faith, and assert
that any prior confusion regarding Deltona Apex Pharmacy, LLC
should be viewed in light of the official corporate filings and
supporting documentation, which confirm that **Mr. Ahmed has had
no ownership interest or income derived from the business since
mid-2021.**

4. Misunderstanding Regarding Transfers to Pakistan

The Debtors respectfully submit clarification regarding certain international wire transfers that have been raised by the Trustee. These transfers were made in **calendar years 2020 and early 2021**, which fall **outside of the two-year lookback period** provided under **11 U.S.C. § 548** unless there is demonstrable evidence of actual intent to defraud creditors.

The Debtors assert, in good faith, that **no such transfers were made with fraudulent intent or for the purpose of evading creditors**. These were routine transactions related to family or property matters abroad during a time when the Debtors were not under bankruptcy protection. There has been **no effort to conceal these transactions**, nor was there any personal benefit retained by the Debtors from those transfers during the statutory period relevant to this proceeding.

Furthermore, the **funds that were received in 2024 and referenced by the Trustee have no direct or indirect connection to the earlier transfers in 2020-2021**. Any assertion that the return of these funds constitutes a hidden or retained interest from the 2021 transaction is **inaccurate,** and we respectfully request the Court to recognize the distinction and lack of legal nexus between the two events.

The Debtors submit this explanation to assist the Court in distinguishing between **legitimate historical financial activity** and the **limited scope of review permissible under the Bankruptcy**

**Code**, particularly when no evidence of fraud or bad faith exists.

A significant portion of the Trustee's concerns hinges on the belief that $400,000 was transferred to Pakistan in 2020 and that $90,000 was subsequently returned in 2024. The Debtors categorically deny that these transactions were derived from bankruptcy estate assets or hidden proceeds. The funds in question were familial and personal in nature, unrelated to the business operations of the U.S.-based entities now under scrutiny. Furthermore, any return funds were not delivered to the Debtors for personal gain but rather reflected partial repayment of private familial obligations. Due to a severe fracture in familial relationships abroad, the Debtors have not been able to obtain records or documentation to satisfy the Trustee's request for accounting, and further cooperation from family in Pakistan has been refused.

5. Clarification on Machine Ownership and Assets

During depositions, certain statements were made suggesting that the Debtors owned medical spa machinery. Upon further review, these statements were inaccurate and the result of misunderstanding. The machinery referenced had been either leased, purchased by third parties, or were under liens and judgments by creditors. The Debtors respectfully clarify that they have no current access or control over these assets and were mistaken in previous statements. Any such error was not deliberate or an attempt to deceive the Court. The Trustee and the Court have raised concerns regarding the Debtors' statements related to the ownership and valuation of machinery and other physical assets, including references made during deposition testimony. The Debtors submit the following clarifications:

Several pieces of machinery and equipment were acquired in 2024, post-petition, through Alibaba.com and similar vendors. These items, used in small business operations related to wellness and aesthetics, are not high-value capital assets and were not intended to be concealed. These purchases were made transparently using funds available at the time and in connection with legitimate post-filing business efforts.

During deposition testimony, Debtor Aysha Khan made an inadvertent misstatement regarding a Thermo Fisher COVID testing machine, indicating it had been paid off. Upon review, this statement was incorrect: the machine is still subject to an outstanding balance, and Thermo Fisher is listed as a creditor in the bankruptcy schedules. The Debtor regrets the inaccuracy and affirms that it was not intentional but rather due to confusion at the time of questioning.

Furthermore, this machine is not currently in the Debtor's possession. It is located at the premises of the Golden Health Care Pharmacy, which has since closed. The machine remains at that location under the control of the landlord, whose information has been provided to the Trustee for verification and inspection if necessary.

The Debtor further clarifies that she currently does not have access to full business or personal records, many of which were lost, displaced, or left behind at various commercial properties after business closures and evictions. As a result, the Debtor is unable to recall or identify all liabilities and assets with precision beyond what has already been listed in the bankruptcy schedules. All available information has been disclosed to the best of the Debtors' knowledge and ability, and any discrepancies were not the result of bad faith but of limited access and memory amid significant financial and logistical turmoil.

The Debtors are willing to cooperate fully to assist the Trustee in confirming asset locations and values and request that the Court recognize that prior inconsistencies were based on lack of records, not concealment.

6. Third-Party Misconduct and Trustee's Opportunity for Recovery

The Trustee has consistently assumed that the Debtors had
control over all assets and accounts related to Golden
Healthcare Pharmacy and Metro/Sreepathi Drugs. This is factually
incorrect. These businesses were under the operational and
financial control of third parties—most notably Abdullah
Alaqrabawi and Areeba Khan. Alaqrabawi was the sole signer on
the Golden Healthcare bank accounts, and he and Areeba Khan
jointly operated Metro's accounts. These individuals executed
unauthorized transactions, removed funds without the Debtors'
approval, and left no clear accounting. The Debtors request that
the Trustee shift investigative efforts toward these
individuals, who may provide a more fruitful path for asset
recovery, and relieve the Debtors of compliance demands for
information beyond their control.

## 7. Limited Nature of Post-Petition Conduct and its Relevance to the Present Filing

The Debtor acknowledges that during a prior deposition, an
admission was made concerning the submission of incomplete or
inaccurately prepared financial documentation **after the petition
was filed,** for the specific purpose of demonstrating sufficient
income to retain a primary residence. The Debtor deeply regrets
this action, which was done under extreme personal and financial
stress, with no intention to deceive the Court or creditors as a
whole, but rather to preserve a family home.

The Debtor fully cooperated during the Trustee's inquiry and, in
recognition of the seriousness of the error and the procedural
delays in submitting amendments, **voluntarily consented to waive
the discharge in that adversary proceeding.** This was a personal
and limited matter and should not be viewed as a broad indicator

of intent or conduct across all aspects of the bankruptcy estate.

Importantly, the Debtor respectfully emphasizes that this post-petition conduct:

- **Did not involve concealment or misuse of estate property;**
- **Was limited to one incident tied to a specific circumstance post-filing;** and
- **Is wholly unrelated to the current issues now raised concerning pre-petition transactions, business ownership, or third-party financial activities.**

The Debtor submits this clarification not to excuse any mistake, but to ensure the record accurately reflects that the post-petition incident **does not form a basis to expand the scope of the estate** or to **mischaracterize the overall nature of the Debtor's conduct before or during this bankruptcy case.**

## III. SUPPLEMENTAL FACTUAL CLARIFICATIONS AND REBUTTALS TO TRUSTEE CLAIMS

### A. Trustee's Accusation of False Testimony Regarding Transfers Over $600

The Trustee states that we made false declarations by stating we had not transferred more than $600 to any individual or entity in the two years preceding the bankruptcy filing. This claim needs context.

At the time of the original bankruptcy petition, **we were advised by our attorney that business-related financial activity should not be included,** as only our personal assets and debts were

subject to the filing. The business entities—Prestige Infusions,
Lush, Metro, Golden Health, Oak Hills, etc.—**were not part of the
bankruptcy estate until the Court's December 17, 2024 Extension
Judgment.**

Accordingly, any pre-2023 transactions—especially those tied to
business accounts or related to the operations of entities with
multiple owners—**were not willfully omitted** but excluded based on
legal advice we received and the procedural stage of the case.
Once the court ordered those businesses into the estate, we did
not attempt to hide these transfers; instead, we sought legal
guidance and remained cautious due to overlapping criminal
investigations involving the same entities.

---

**B. Reluctance to Disclose Business-Related Transfers Due to Indictment
and Risk of Self-Incrimination**

It is important to reiterate that **the businesses eventually
brought into the bankruptcy estate are also subject to ongoing
federal investigation.** Because of this, we exercised **Fifth
Amendment rights** and remained guarded about providing detailed
explanations concerning prior business activity — not out of
concealment, but **to avoid violating criminal procedure rights or
prejudicing our legal defense.**

This reluctance should not be equated with dishonesty or bad
faith. The bankruptcy estate's inclusion of these entities
created overlapping legal exposure, and we were **not given any
legal roadmap for how to comply while under indictment.** In this
environment, omissions were made out of necessity, fear, and
lack of resources — not manipulation.

---

**C. Lack of Control Over Certain Business Documents and Operations**

We were **not in control of several of the business entities that the Trustee now asserts we concealed assets from.** For example:

- **Golden Health Care LLC** had **multiple owners,** and **financial control shifted to other partners** well before the bankruptcy filing.
- **Metro Health** was similarly structured with shared control.
- Even if we had theoretical ownership interests, **access to financial statements, transactional records, or account logins was denied or obstructed by other partners.**

The Trustee's failure to acknowledge this complexity has unfairly created the impression of intentional concealment when in fact, **we were locked out of these entities and faced retaliation when demanding accountability.**

---

**D. Partner Disputes and Third-Party Liability for Business Transactions**

In particular, **Golden Health Care and Metro Health** were plagued by **partner disputes and unauthorized withdrawals,** including transactions we did not initiate or benefit from.

As shown in the attached email from our attorney dated July 2021 regarding **Abduallah Alaqrabawi,** there were legal efforts to recover improperly removed funds. When demanding these funds back **we were repeatedly sued or threatened with litigation when demanding return of business funds**

.

This demonstrates two key points:

1. **Funds were withdrawn by other owners in these entities without our consent,** and these transactions may have been inaccurately attributed to us.
2. The bankruptcy court and Trustee should **investigate other parties involved in those businesses,** who arguably benefited from the assets in question and had fiduciary roles.

We respectfully urge the court to **require full inquiry into these third parties' liability,** as it would be inequitable to hold us solely accountable for complex business disputes and joint accounts that we neither controlled nor had access to at the time of filing.

---

## IV. Request for Equity and Fairness in the Court's Evaluation

To reiterate:

- Our omissions were largely due to complete misunderstandings and incorrect attorney advice. The council was unaware of the scope before the businesses were included.
- We did not intentionally mislead the court or conceal assets for personal gain.
- We were navigating multiple simultaneous legal crises, including a federal indictment, which reasonably impaired our ability to fully comply at the pace the Trustee demanded.

- The Trustee's narrative **fails to account for third-party misconduct**, partner fraud, and denied access to records.

We are ready and willing to cooperate moving forward — but we ask the Court not to confuse our limitations and missteps with malice or fraud

**Debtors' Compliance and Settlement Proposal**

Introduction:

The Debtors, Aysha Khan and Ayyaz Ahmed, respectfully submit this Compliance and Settlement Proposal to affirm their intent to fully cooperate with the Trustee and this Honorable Court.

While previous filings and compliance efforts were impacted by counsel misguidance, family conflicts, lack of access to business records, and confusion stemming from overlapping entity control, the Debtors are committed to resolving all outstanding matters in good faith.

This proposal outlines specific actions the Debtors are prepared to take to bring the estate closer to resolution, clarify previously misunderstood disclosures, and demonstrate their willingness to work constructively with the Trustee.

---

I. Compliance Steps Undertaken or in Progress

The Debtors have already commenced the following corrective actions:

1. Preparation of Amended Schedules:

   o Updated Schedules A/B, D, E/F, and SOFA to include:

     ■ All known business accounts used post-petition.

     ■ All known bank transfers > $600 within the two years prior to 12/2023.

     ■ Clarifications on business ownership interests, liabilities, and third-party involvement.

2. Forensic Review of Bank Transactions:

- o A comprehensive accounting is being conducted for all bank transactions from December 2021 to December 2023 for:

  - Lush Account

  - Prestige Infusions

  - Oak Hills Medical

  - Deltona Apex

  - Golden Health Care

3. Disclosure of Receivership Order:

- o Formal filing to bring to the Court's attention the 2022 order granting Leonite Capital receivership over Prestige Infusions.

- o This includes access to the accounts, refunds, employee payrolls, and any claim-related funds. The Debtors assert no control over these assets post-appointment.

4. Clarification on Machine Ownership and Physical Assets:

   o  Machines purchased in 2024 (e.g., via Alibaba) have
      been inventoried.

   o  Misstatements during deposition regarding Thermo
      Fisher machine are acknowledged and clarified — the
      machine was not fully paid off and remains under
      control of the landlord at the Golden location.

5. COVID-19 Context Disclosures:

   o  A complete list of unbilled COVID-19 claims from Oak
      Hills and other facilities is being prepared to assist
      the Trustee in understanding the business activity
      during 2020-2022. These may not be billed due to them
      being uninsured. The Uninsured Program ended in March
      of 2022 so these have not been billed.

---

## II. Settlement Proposal and Requested Orders

In the interest of resolving this matter fairly and efficiently,
the Debtors respectfully propose the following terms for
settlement and forward compliance:

1. Suspension of Contempt or Sanctions Proceedings:

   o  Debtors request that the Court temporarily suspend any
      pending motions for contempt or monetary sanctions
      while amended schedules and disclosures are filed and
      reviewed.

2. Entry of a Protective Order or Subpoena Instruction:

   ○ Direct the Trustee to issue targeted subpoenas to
     third parties (e.g., Areeba Khan, Abdullah Alaqrabawi,
     Leonite Capital) who are in possession of key
     financial records and business control, rather than
     requiring the Debtors to produce documents they cannot
     access.

3. Recognition of Debtors' Lack of Control Over Certain Assets
   and Entities:

   ○ A formal acknowledgment that:

      ■ Ayyaz Ahmed had no access to Deltona Apex
        financials or operations.

      ■ Aysha Khan had no access to Golden Health Care
        bank accounts (held solely by Abdullah
        Alaqrabawi). Include Nzone Pharmacy DBA
        Elite,Metro Drugs,and Wells Fargo account for
        Deltona Medical Arts.

      ■ Certain business accounts and assets are now
        irretrievable due to eviction or third-party
        actions.

4. Court-Supervised Filing of Amended Schedules:

   ○ Debtors will file updated Schedules and SOFA entries
     within 14 days of approval of this compliance
     agreement, with support from a new legal

representative (or pro se review conference).

5. Status Conference for Settlement Roadmap:

  o Debtors request a status conference be scheduled
    within 30 days for the Court, Trustee, and Debtors to
    formally review the compliance efforts and determine
    next steps in liquidation or resolution.

---

## III. Affirmation of Good Faith

The Debtors maintain that:

- They never intended to conceal assets, mislead the Court,
  or delay this process;

- Their filings were made in good faith under legal guidance
  and with incomplete access to many relevant records;

- They have already consented to waiver of discharge,
  underscoring their sincerity in accepting responsibility;

- They respectfully seek a path forward that avoids prolonged
  litigation and allows closure for all parties.

---

Proposal

WHEREFORE, the Debtors respectfully request that the Court:

1. Accept this compliance proposal in lieu of contempt findings;

2. Suspend enforcement of sanctions pending the filing of updated disclosures;

3. Instruct the Trustee to issue third-party subpoenas where needed;

4. Schedule a settlement conference within 30-60 days;

5. Grant such other relief as this Court deems just and proper.

## IV. Conclusion

The Debtors submit this proposal in good faith and with sincere intention to resolve all disputes in a manner that:

- Respects the integrity of the Court;
- Protects the rights of creditors;
- Acknowledges and cooperates with the Trustee's mandate;
- Prevents prolonged litigation and unnecessary administrative expense;
- Allows third-party business owners not subject to this bankruptcy to resume lawful operations.

Respectfully submitted,

Ayyaz Ahmed, Debtor
Date: _____    9/19/25

Aysha Khan, Debtor

Date: _____    9/19/25